IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| KISSY WILLIAMS, )<br>)<br>   Plaintiff, )<br>)<br>   v. )<br>)<br>THE HOUSING AUTHORITY OF )<br>THE CITY OF GREENVILLE, )<br>)<br>CINDI HERRERA, in her official capacity )<br>as the Interim Executive Director of the )<br>Housing Authority of the City of Greenville, )<br>)<br>   Defendants. )<br>_____) | **COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Plaintiff Kissy Williams ("Plaintiff"), a low-income mother of two minor children, faces imminent homelessness due to her termination from the Section 8 Housing Choice Voucher program ("voucher program") by Defendant Housing Authority of the City of Greenville ("GHA"). The voucher program is a federal assistance program of tenant-based rent supplement that is administered and operated in Greenville, South Carolina by Defendant GHA.

2. The voucher program is governed by 42 U.S.C. § 1437f(o) and other related sections of 42 U.S.C. § 1437f and the regulations promulgated by the Department of Housing of Urban Development ("HUD") at 24 C.F.R. part 982 and 24 C.F.R. part 5.  The basic purpose of the program is to provide lower income families with monthly rental assistance in order to ensure safe, decent and sanitary housing.

3. Defendants terminated Plaintiff from the voucher program for committing fraud, bribery or other corrupt or criminal act in connection with the program when she reported a change in

her household income six (6) days past the deadline for reporting such changes required by Defendants.

4.     Plaintiff seeks a declaration that Defendants' termination of Plaintiff from the voucher program for fraud is inconsistent with the federal housing provisions.  Plaintiff further seeks a declaration that Defendants terminated her from the voucher program in violation of the Due Process Clause of the 14th Amendment of the U.S. Constitution, federal regulations enumerated at 24 C.F.R. part 982, and Defendant GHA's administrative plan.  Plaintiff seeks an injunction requiring Defendants to reinstate Plaintiff's Section 8 voucher and requiring Defendants to remit Plaintiff's monthly rental subsidy during the pendency of this action.  Plaintiff also seeks compensatory and further damages incurred due to the unlawful termination along with attorney fees and costs of bringing this action to enforce her constitutional and statutory rights.

## JURISDICTION AND VENUE

5.     Jurisdiction is conferred on this court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) in that this is a civil action arising under the laws of the United States.

6.     Jurisdiction is also conferred by 28 U.S.C. §§ 1343(a)(3)-(4).

7.     This Court has the authority to grant the relief requested pursuant to 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (injunctive relief) and 28 U.S.C. § 1988 (attorney fees).

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant GHA maintains its offices and conducts its business in this district and a substantial part of the events of omissions occurred in this district.  The case is properly filed in Greenville, South Carolina, pursuant to Local Rule 3.01 because a substantial part of the events or omissions occurred in Greenville Division counties.

## PARTIES

Complaint for Declaratory and Injunctive Relief

9. Plaintiff is a citizen and resident of Greenville County, State of South Carolina. Her family consists of her and her two minor children.

10. Defendant GHA is a federally-funded, municipal entity, which is authorized to administer the voucher program pursuant to 42 U.S.C. § 1437f. Defendant GHA is a public housing agency as defined in 42 U.S.C. § 1437a(b)(6) and 24 C.F.R. § 982.4(b).

11. Defendant Cindi Herrera ("Herrera") is the Interim Executive Director of Defendant GHA and has made or approved all administrative decisions material hereto.

## STATUTORY AND REGULATORY BACKGROUND

12. As set forth in the United States Housing Act of 1937 ("USHA"), Congress established the Section 8 housing assistance program:

> For the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing, assistance payments may be made with respect to existing housing in accordance with the provisions of this section. 42 U.S.C. § 1437f(a) (2012).

13. Persons interested in participating in the voucher program make an application with the local public housing agency ("PHA"). Generally, the PHA grants admission to applicants who are: a 'family,' income-eligible and citizens. 24 C.F.R. § 982.201(a) (2013). The PHA will determine a family's income-eligibility by calculating the family's annual income. 42 U.S.C. § 1437f(c)(3) (2012); 24 C.F.R. § 982.201(b)(3) (2013).

14. The PHA must assemble information verifying an applicant's eligibility sixty (60) days prior to the issuance of a voucher. 24 C.F.R. § 982.201(e) (2013). To assist in this process, applicants are to provide the PHA with the complete and accurate social security number of each member of the household who is at least six years of age. 24 C.F.R. § 5.216(b); 24 C.F.R. § 982.551(b)(3) (2013). Additionally, each household member who is at least 18 years of age is to sign consent forms allowing the PHA to obtain information from employers, wage reports and

other sources of an applicant's income. 42 U.S.C. § 3544(b) (2012); 24 C.F.R. § 5.230 (2013); 24 C.F.R. § 5.214 (2013).

15.     Once approved for program eligibility, applicants are issued a voucher by the PHA and thereafter are known as "participants" (i.e., Plaintiff). 24 C.F.R. § 982.202 (2013); 24 C.F.R. § 982.302 (2013). Participants then seek a rental unit on the open market and request approval of a desired unit by the PHA. 24 C.F.R. § 982.302(c) (2013). The PHA then inspects the requested unit to ensure it has an appropriate number of bedrooms and it meets applicable housing codes such as the federal housing quality standards or "HQS." 24 C.F.R §§ 982.305(a)(1)-(2) (2013); 24 C.F.R. § 982.401(a)(3) (2013). Once the unit is approved the participant must sign a lease with the unit's owner or property manager and the owner must sign a contract with the PHA. 24 C.F.R. § 982.308(b) (2013); 24 C.F.R. § 982.305(e) (2013).

16.     The participant pays the higher of ten percent (10%) of the household monthly income or thirty percent (30%) of the household monthly adjusted income in rent ("total tenant payment"). 24 C.F.R. § 5.628(a) (2013). Household monthly adjusted income allows families to take deductions from monthly income, for example, for children, full-time students and disabled families. 24 C.F.R. § 5.611(a) (2013). The difference between the total tenant payment and the PHA approved "fair market rent" is paid directly to the owner pursuant to contract by the PHA as a Housing Assistance Payment ("HAP") for the benefit of the participant. 24 C.F.R. § 982.518 (2013).

17.     Each year the PHA conducts a reexamination of a participating family's income and composition in order to certify the family's eligibility and determine any adjustments in the total tenant payment and HAP. 24 C.F.R. § 982.516(a) (2013).  This process requires the PHA to

Complaint for Declaratory and Injunctive Relief

obtain and document third-party verification of a family's income along with other factors that affect the family's adjusted income. 24 C.F.R. § 982.516(a)(2) (2013).

## PARTICIPANT OBLIGATIONS UNDER THE PROGRAM

18. While in the voucher program participants are obligated to supply any information that the PHA determines is necessary in the administration of the program including evidence of citizenship. 24 C.F.R. § 982.551(b)(1) (2013).

19. The participant must also supply any information requested by the PHA for use in a regularly scheduled re-examination or interim re-examination of family income and composition in accordance with HUD requirements. 24 C.F.R. § 982.551(b)(2) (2013).

20. HUD regulations governing the voucher program enumerate the grounds upon which a PHA may terminate program assistance for a participant. 24 C.F.R. § 982.552(c) (2013).

21. The PHA may terminate program assistance if the participant violates any family obligation under the program. 24 C.F.R. § 982.552(c)(1) (2013).

22. The PHA may also terminate program assistance if any member of the participating family has committed fraud, bribery, or any other corrupt or criminal act in connection with any Federal housing program. 24 C.F.R. § 982.552(c)(1) (2013).

23. If the PHA determines to terminate assistance for a participant the PHA must give the participant an opportunity for an informal hearing to consider whether the decision to terminate is in accordance with the law, HUD regulations and PHA policies. 24 C.F.R. § 982.555(a)(1) (2013).

## FAIR HEARING REQUIREMENTS

24. The PHA must give the participant prompt written notice that the family may request an informal hearing. 24 C.F.R. § 982.555(c)(2) (2013).

Complaint for Declaratory and Injunctive Relief

5

25. The notice must contain a brief statement of reasons for the decision, inform the participant of the right to request an informal hearing and state the deadline for the family to request the hearing. 24 C.F.R. § 982.555(c)(2) (2013).

26. The PHA's administrative plan must state the procedures for conducting informal hearings for participants. 24 C.F.R. § 982.555(e)(1) (2013).

27. Prior to the hearing, the participant must be given the opportunity to examine and copy any PHA documents that are directly relevant to the hearing. 24 C.F.R. § 982.555(e)(2) (2013).

28. The hearing may be conducted by any person designated by the PHA, other than a person who made or approved the decision to terminate or a subordinate of this person. 24 C.F.R. § 982.555(e)(4) (2013).

29. The participant and the PHA must be given the opportunity to present evidence and may question any witnesses. 24 C.F.R. C.F.R. § 982.555(e)(5) (2013).

30. Factual determinations relating to the individual circumstances of the participant shall be based on a preponderance of the evidence presented at the hearing. 24 C.F.R. § 982.555(e)(6) (2013).

31. The person who conducts the hearing ("hearing officer") must issue a written decision stating the reasons for the decision and promptly send a copy of the decision to the participant. 24 C.F. R. § 982.555 (e)(6) (2013).

### HUD HOUSING CHOICE VOUCHER GUIDEBOOK

32. HUD publishes a guidebook to advise PHAs regarding the administration of the voucher program. HUD Guidebook 7420.10G, § 1.1.

33. HUD defines 'fraud' and 'abuse' as

> "[A] single act or pattern of actions made with the intent to deceive or mislead, constituting a false statement, omission, or concealment of a substantive fact. Fraud and

Complaint for Declaratory and Injunctive Relief

6

abuse result in the payment of housing choice voucher program funds in violation of program requirements." HUD Guidebook 7420.10G, § 22.2.

34. HUD defines 'error' and 'omission' as

"[S]ituations in which a family or owner does not comply with program requirements. An error or omission may be intentional or unintentional." HUD Guidebook 7420.10G, § 22.2.

35. HUD considers the failure to report changes as required such as failure to notify the PHA of a change in family composition or income as an error or omission. HUD Guidebook 7420.10G, § 22.2.

## GHA SECTION 8 ADMINISTRATIVE PLAN

36. PHAs must adopt written administrative plans that establish local policies for administering the housing assistance program in accordance with HUD regulations and requirements. 42 U.S.C. § 1437c-1 (2012); 24 C.F.R. § 982.54(a) (2013). The PHA must administer the voucher program in accordance with the PHA administrative plan. 42 U.S.C. § 1437c-1(1) (2012); 24 C.F.R. § 982.54(c) (2013).

37. GHA conducts annual re-certifications of all voucher program participants based on the anniversary date of the lease or HAP contract. GHA Section 8 Admin. Plan, § 11.2. Once a year GHA will mail notification to the participant's address of the requirements to complete their annual re-certification. GHA Section 8 Admin. Plan, § 11.2.

38. If a participant completes a zero income survival statement at the time of the annual re-certification and later obtains other income, they must report the new income within 30 days from the date it becomes effective and GHA will conduct an interim re-certification. GHA Section 8 Admin. Plan, § 11.3.

39. If a household member is not employed at the time of annual re-certification but later obtains a job, the family must report the new employment within 30 days from the date of starting work and an interim re-certification will be completed. GHA Section 8 Admin. Plan, § 11.3.

40. If changes in rent for interim re-certification would result in an increase of tenant rent, the change will become effective the first of the second month following the month in which the change occurred. GHA Section 8 Admin. Plan, § 11.3.

41. Defendant GHA defines fraud and abuse as a single act or pattern of actions that:

> "Constitutes false statement, omission, or concealment of a substantive fact, made with the intent to deceive or mislead, and that results in payment of HCV program funds in violation of HCV program requirements." GHA Section 8 Admin. Plan, § 16.2.

42. Defendant GHA has the policy that:

> "Failure to report changes in family composition and income as well as permitting unreported persons to reside in the assisted household shall be considered fraud." GHA Section 8 Admin. Plan, § 16.2.

## FACTUAL ALLEGATIONS

43. In October 2009, Plaintiff began participating in the voucher program. At that time, Plaintiff began occupying a dwelling unit at Avalon Apartments ("Avalon") under a residential tenancy agreement.

44. In October 2009, Avalon entered into a HAP contract with Defendant GHA.

45. Pursuant to the HAP contract, Defendant GHA paid $760.00 per month in rental assistance on Plaintiff's behalf.

46. On August 12, 2013, Plaintiff began training for employment with St. Anthony of Padua Catholic School ("St. Anthony"). On August 17, 2013, Plaintiff began employment with St. Anthony.

47.    On September 17, 2013, Plaintiff notified Defendant GHA of her employment with St. Anthony by sending an email to Defendant GHA with the assistance of Avalon property manager Denise Wharton.

48.    Subsequent to September 17, 2013, Plaintiff did not receive any notice from Defendant GHA requiring her to furnish any documents to Defendant GHA regarding her employment with St. Anthony.

49.    On December 2, 2013, Plaintiff again informed Defendants of her employment when she submitted her re-certification verification paperwork.

50.    In December 2013, Defendant GHA notified Plaintiff that Defendant GHA intended to terminate her from the voucher program for committing fraud, bribery or other corrupt or criminal act in connection with the program.

51.    Plaintiff requested an informal hearing with Defendant GHA.

52.    On January 15, 2014, Defendant GHA conducted an informal hearing. Present at the hearing were Plaintiff, Plaintiff's friend, Julia Mullen, GHA Compliance Specialist Kim Emerson, and hearing officer Marian B. Todd. Plaintiff was not represented by counsel. The hearing was not recorded.

53.    On February 3, 2014, the hearing officer issued a written decision, which upheld Plaintiff's termination from the voucher program effective March 31, 2014. The hearing officer concluded that Plaintiff committed fraud, bribery or other corrupt or criminal act in connection with the voucher program. The decision states:

> "The specific action in violation of the above Family Obligation is: Ms. Williams was hired by St. Anthony of Padua School on August 12, 2013 per the EIV report and did not report this income until she submitted her 90 day Zero Income Update Application on December 2, 2013. Failure to report changes in income within 30 days is considered fraud."

> "After carefully reviewing all statements and evidence, it is the decision of this informal Hearing Officer that the Proposed Termination of your Housing Choice Voucher shall **stand as written**. Ms. Williams did not report that she was working within 30 days. Researched and a statement from Ms. Williams dated September 17, 2013 stated 'I Kissy Williams would like to report that I am now employed at St. Anthony's Catholic School' was emailed on September 17, 2014 (sic) from Avalon Apartments. An e-mailed (sic) response from the Housing Authority stated that Ms. Williams has to come into the office and complete a change request form as well as provide verification of employment (ie … paystubs)."

54. On March 12, 2014, Plaintiff sent Defendant Herrera a letter requesting that Defendants withdraw the notice of termination against Plaintiff because the hearing officer's decision was contrary to federal law, HUD regulations and GHA policies.

55. Defendant Herrera did not respond to this request.

56. On March 31, 2014, Defendant GHA terminated Plaintiff from the voucher program and has not made a HAP on her behalf after March 2014. Since this date Plaintiff has been solely responsible for the entire monthly rental amount for her residence. Due to Plaintiff's status as a low-income family she has not been able to pay the full rental amount and she and her family face imminent eviction from her home.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
Defendants' Termination of Plaintiff for Fraud is Contrary to Federal Law

57. Plaintiff hereby alleges and incorporates by reference all of the preceding paragraphs.

58. Defendants' termination of Plaintiff from the voucher program for fraud is inconsistent with federal housing provisions established by HUD.

59. HUD considers a failure to report changes in income as an error or omission and not as an incident of fraud or abuse.

60. HUD defines fraud to include a participant's intent to deceive or mislead as an element of the act. The definition also includes a requirement that the act result in the payment of voucher program funds in violation of program requirements.

61. Even though the hearing officer acknowledged that Plaintiff reported her employment to Defendant GHA on September 17, 2013, the hearing officer concluded that Plaintiff committed fraud because Defendant GHA's policy is that 'failure to report changes in income within 30 days is considered fraud.'

62. Defendant GHA's policy of designating every incident where a participant does not report income within 30 days as fraud is contrary to HUD requirements by failing to incorporate the elements of fraud required under HUD's definition as well as the definition in Defendant GHA's Administrative Plan.

63. By unlawfully terminating Plaintiff from the voucher program in violation of federal housing provisions Defendants have deprived Plaintiff of a right secured by federal law under color of State law in violation of 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF
### Hearing Officer's Decision Is Not Supported by Substantial Evidence

64. Plaintiff hereby alleges and incorporates by reference all of the preceding paragraphs.

65. This Court, in order to ensure Defendants complied with federal law, must be satisfied that the hearing officer's conclusions are supported by substantial evidence. *Clark v. Alexander*, 85 F.3d 146 (4th Cir. 1996).

66. The hearing officer upheld Plaintiff's termination from the voucher program concluding that Plaintiff committed fraud by failing to report changes in income within 30 days.

67. HUD and Defendant GHA's Administrative Plan both define fraud as an act of omission that requires an intent to deceive or mislead and the act must result in payment of voucher program funds in violation of the program.

68. The hearing officer acknowledged Plaintiff notified Defendants on September 17, 2013, of her change in employment.

69. The hearing officer, however, concluded Plaintiff committed fraud and upheld Plaintiff's termination from the voucher program.

70. Defendants presented no evidence that demonstrated or inferred that Plaintiff made a false statement, omission or concealment of a substantive fact.

71. Defendants presented no evidence that demonstrated or inferred that Plaintiff intended to deceive or mislead Defendant GHA.

72. Defendants presented no evidence that demonstrated or inferred that Defendants made a payment of voucher program funds in violation of voucher program requirements because of an act or omission by Plaintiff.

73. Because Defendants did not produce evidence demonstrating that Plaintiff's act or omission constituted fraud as defined by HUD or Defendant GHA's Administrative Plan, the hearing officer's conclusion that Plaintiff committed fraud is not supported by substantial evidence.

74. By unlawfully terminating Plaintiff from the voucher program in violation of federal law Defendants have deprived Plaintiff of a right secured by federal law under color of State law in violation of 42 U.S.C. § 1983.

### THIRD CLAIM FOR RELIEF
Violation of U.S. CONST. Amend. XIV, § 1 by Defendants

75. Plaintiff hereby alleges and incorporates by reference all of the preceding paragraphs.

76.     U.S. CONST. amend. XIV, §1 prohibits states from depriving any person of property without due process of law.  The 14th Amendment constrains Defendants from terminating participants from the voucher program within the limits of due process.

77.     Defendants' January 15, 2014, informal hearing and review of Plaintiff's termination from the voucher program violated Plaintiff's due process rights including, but not limited to the following respects:

   a.   The hearing officer's determination that Plaintiff committed fraud is not supported by a preponderance of the evidence in violation of 24 C.F.R. § 982.555(e)(6).

   b.   The hearing officer's determination that Plaintiff did not report her employment until December 2, 2013, is contradicted within the findings contained in the hearing officer's own decision and therefore not supported by a preponderance of the evidence in violation of 24 C.F.R. § 982.555(e)(6).

   c.   The hearing officer's determination that Plaintiff committed fraud does not comport with the definition of fraud set forth by HUD and Defendant GHA's Administrative Plan.

   d.   Defendant GHA's policy that failure to report changes of income within 30 days necessarily constitutes fraud is not consistent with the definition of fraud set forth by HUD and Defendant GHA's Administrative Plan.

   e.   Defendant GHA's policy that failure to report changes of income within 30 days necessarily constitutes fraud prevented Plaintiff from presenting evidence that her circumstances fail to meet the definition of fraud.

   e.

78.     By unlawfully terminating Plaintiff from the voucher program in violation of U.S. CONST. amend. XIV, § 1, Defendants have deprived Plaintiff of a right secured by the Constitution under color of State law in violation of 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

A.     Declare that Defendants violated 42 U.S.C. § 1983 by terminating Plaintiff from the voucher program in violation of federal housing provisions;

B.      Declare that the Hearing Officer's decision to uphold the termination is not supported by substantial evidence;

C.      Declare that Defendants violated 42 U.S.C. § 1983 by terminating Plaintiff's Section 8 voucher in violation of U.S. CONST. amend. XIV, § 1 by failing to provide Plaintiff due process;

D.      Enjoin Defendants to reinstate Plaintiff into the voucher program and continue making the HAP to Avalon on her behalf;

E.      Award Plaintiff compensatory damages;

F.      Award Plaintiff attorney fees and costs for bringing this action to enforce her rights; and

G.      Award to Plaintiff such other relief as this Court deems just and proper.

Respectfully submitted this 8th day of May, 2014.

/s/ Michael S. Gambrell
Michael S. Gambrell, Fed. Id# 9756
South Carolina Legal Services
701 South Main Street
Greenville, South Carolina 29601
Phone: (864) 679-3525
Facsimile: (864) 679-3260
Email: michaelgambrell@sclegal.org

Complaint for Declaratory and Injunctive Relief